UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JACK and KATHARINE BUTTURINI, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:08-CV-128 |
| ) | (Phillips) |
| BRIAN BLAKNEY, T.J. SCARBROUGH, ) | |
| JIMMY DAVIS, JIMMIE WIGGINS, ) | |
| SHERIFF TIM GUIDER and ) | |
| LOUDON COUNTY, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising out of plaintiffs' arrest for contributing to the delinquency of a minor and providing alcoholic beverages to minors at a prom party plaintiffs held for their daughter on May 6, 2007. The parties have filed cross-motions for summary judgment.

### I. Motion to Strike

Defendants move to strike plaintiffs' motion for summary judgment because the motion exceeds 25 pages in length and the motion fails to contain a concise statement of material facts [Doc. 25]. Plaintiffs have filed a concise statement of material facts and asked for leave to file a brief in excess of 25 pages [Doc. 28]. Accordingly, defendants'

motion to strike plaintiffs' motion for summary judgment [Doc. 25] is **DENIED AS MOOT**. The court will proceed to address the parties' cross-motions for summary judgment.

## II. Facts

On May 6, 2007, plaintiffs' hosted a prom party for their daughter and her friends at their home at 1690 Sandy Shores Drive in Loudon County. According to plaintiffs, Mrs. Butturini and her daughter planned to have eight couples over after the prom to sleep over and Mrs. Butturini would cook breakfast. Plaintiffs' home includes a back yard which extends to the lake as well as a boat dock and boat house. A neighbor called 911 at approximately 3:22 a.m. and complained of a "loud party" at the plaintiffs' residence. When officers arrived at the plaintiffs' residence there were numerous vehicles in the road and on plaintiffs' lawn. As he approached the residence, Officer Scarbrough encountered a young man and his date. She was throwing up and he reeked of alcohol. The young man told Scarbrough the residence was having a "prom party" and they got the alcohol from the house. Officer Scarbrough told the boy and girl to stay put and he radioed for assistance. Officers Wiggins, Blakney, Kenner and Stanley responded. The following facts are from the individual officers' and the plaintiffs' perspectives:

**Officer T.J. Scarbrough**

Officer Scarbrough arrived at the plaintiffs' residence at approximately 3:24 a.m. to investigate a report of a "loud party" at the residence. He initially encountered a boy who smelled of alcohol and admitted consuming the same, and a girl throwing up. The girl

-2-

told Scarbrough they had been at a "prom party" at the residence. The young man told Scarbrough that he got the alcohol at the residence.

There were vehicles on both sides of the road and in the plaintiffs' yard. The officers proceeded down the driveway and Mr. Butturini came from around the back yard and met them in the driveway. He was dressed in a T-shirt, shorts and flip flops. Officer Wiggins advised him that they had received a call of a loud party and all deputies had noticed there were intoxicated kids on the property. Mr. Butturini told officers there was no underage drinking on the property, and told Wiggins that he could not search the house. Mrs. Butturini came out of the house and she and her husband argued over the search of the residence. Mrs. Butturini then consented to the search. The officers heard no loud music, but kids were everywhere. Officers observed beer cans and bottles throughout the house. Officers did not witness any "actual drinking" but noticed several intoxicated underage children inside and outside the house.

Officers decided to send the kids inside the house to the front yard and the kids in the back yard were sent toward the front yard. At that point, officers performed field sobriety tests and interviewed the children. Twenty-three children were cited for underage consumption. All cited admitted to drinking alcohol. Scarbrough was specifically told by kids at the scene that alcohol was available and/or provided at the house. Officer Scarbrough charged both Mr. and Mrs. Butturini with contributing to the delinquency of a

minor. He based the charge on his belief that there was underage drinking and the Butturinis were providing a place for the minors to consume alcohol.

**Officer Jimmie Wiggins**

When Wiggins arrived at the scene, Officer Scarbrough advised him that he suspected underage drinking was going on at the residence. Wiggins encountered minors who were leaving the house and who had been drinking. Wiggins explained to Mr. Butturini that Officer Scarbrough had encountered an underage couple at the end of his driveway who had been drinking and indicated to him that they had come from his home. Wiggins also pointed out to Mr. Butturini that there were a lot of cars in the yard and there were obviously a lot of people at the residence. Mr. Butturini denied knowing about any underage drinking. Mr. Butturini denied officers permission to enter the home after Wiggins requested to take account of the state of the juveniles inside the house. Mrs. Butturini gave permission to enter the house. Wiggins and Scarbrough went through the house with Mrs. Butturini.

Wiggins observed multiple empty alcoholic beverage containers and cans around the house. The first room he entered had ten to fifteen kids and contained empty liquor bottles and beer cans. Wiggins also encountered five to six kids hiding in the garage which also contained empty beer cans. Wiggins likewise found a vodka bottle in the den. In all, Wiggins encountered thirty to forty people inside the house. Officer Stanley told

Wiggins he found multiple juveniles and empty beer cans at the lake. Wiggins also noticed that a lot of beer cans had been thrown in the lake and were floating.

Wiggins then attempted to separate the juveniles from the adults to determine who had been drinking. Several of the underage individuals made statements that the alcoholic beverages were provided by the Butturinis. Wiggins made the decision to arrest Mr. and Mrs. Butturini and believed he had probable cause for the arrest based on the statements made to him by the minors at the scene and the circumstances of the residence.

**Officer Brian Blakney**

When Officer Blakney arrived on the scene, several cars were parked on the street and in the plaintiffs' yard. Officer Wiggins told Blakney to go to the back of the house and make sure no one tried to exit toward the lake. Blakney observed people running as he approached the back yard toward the lake and boat dock. He found kids hiding under the deck of the Butturini pool. He asked the kids to come out from underneath the deck, and immediately observed alcohol, including beer cans, beer cases, and liquor bottles throughout the yard. Blakney instructed the kids to return to the house as the officers attempted to determine who was underage.

Blakney cited everyone who was underage and called several parents to come and pick up their children. Several of the minors who were issued citations made

statements that alcoholic beverages were provided by the Butturinis. On May 14, 2007, Blakney executed a warrant against both Mr. and Mrs. Butturini for providing alcohol to minors. May 14 was the plaintiffs' first court appearance and they were served with the warrant at that time.

**Officer Marty Stanley**

Officer Stanley was dispatched to the plaintiff's residence as a result of a call for assistance from Officer Wiggins. Stanley stood by the side of the house and went to the back yard. When he went to the back yard, he saw kids hiding, and beer cans, bottles, and champagne bottles in the back yard, on the deck, and boat dock. Stanley found kids in the Butturinis' boat, on their boat dock, and on the roof of the house boat. Stanley never went inside the residence. He stayed in the back yard and directed the kids to the front yard. Stanley did see one kid jump in the lake and swim to the other side, get on the dock, and escape.

**Jack Butturini**

On the night of the prom, the Butturinis' daughter and approximately eight girls with their dates arrived at the residence around 11:30 p.m. To the plaintiffs' knowledge, none of their daughter's friends had been drinking alcohol and did not bring alcohol with them. Mr. Butturini went to bed around 12:30 a.m. Mrs. Butturini did not go to bed and was awake the entire night. During the course of the night, neither Mr. nor Mrs. Butturini saw anyone drinking alcohol, did not know that anyone was drinking alcohol, and

-6-

Case 3:08-cv-00128-TWP-HBG   Document 60   Filed 03/07/12   Page 6 of 18   PageID #: 924

did not see any of the teenagers with alcohol. The only person whom the Butturinis knew was consuming alcohol was their oldest son, William, who was of age. William had a cooler of beer at 9:00 p.m. and went out on the lake, some distance from the home, with some friends. When William came back from the lake, he brought the cooler to the back porch of the home.

Mr. Butturini was awakened by his son William when the police arrived at the home. Mr. Butturini observed numerous cars in the street and in his yard that were not there when he went to bed. He did not hear any kids coming or going in cars and he did not hear any kids outside the home. When he was told by the officer that a girl told the officers that she had gotten alcohol at his house, he told the officers that this was not possible. Mr. Butturini refused the officers' request to search the house. At this point, Mr. Butturini states that he was detained by the officers and ordered to sit on the porch of his house and not move. When he was allowed inside the residence to take his blood pressure medicine, Mr. Butturini stated he did not see any beer cans in the residence.

**Katharine Butturini**

When the officers arrived, Mrs. Butturini was inside the house in the kitchen preparing casseroles for breakfast for her daughter's friends. She did not leave the kitchen until someone ran in and got her because they said that her husband needed her out front. Mrs. Butturini gave the officers permission to enter the home to conduct a search.

Mrs. Butturini stated she was unaware that there were uninvited guests at her residence. She did not see any uninvited guests in her house prior to the police arriving at her residence. She also did not know that there were uninvited guests outside her home until she went out to the front after the police arrived. She did not hear any cars pull up onto her lawn or in front of her house and she did not hear any of the uninvited kids outside her residence prior to the officers' arrival. Mrs. Butturini testified that the boat dock is not visible from the house, and can be accessed through two different side gates without having to enter the home. If there were underage persons drinking on her property, she was not aware of it.

The Butturinis contend that none of the teenagers who were arrested or who received a citation for underage drinking were actually invited to their residence.

**Robert Butturini**

Robert Butturini, plaintiffs' son, was at the residence on the night of the prom party. He and some friends were down at the boat dock and they had some beer. He and his friends returned to the residence around midnight and sat on the back porch. When the police arrived, he walked around the house, including the back yard, and did not observe any alcohol, beer cans, beer cases, or liquor bottles.

-8-

### Evans Butturini

Evans Butturini, plaintiffs' son, was at the boat dock fishing with friends. They did not have any alcoholic beverages. After the police arrived, he returned to the residence and did not observe any beer cans or other alcoholic containers in the back yard. The only people he saw drinking were his brother and several of his friends, who were all over 21 years of age. They had been at the dock and went out on the boat several hours before the police arrived.

### Minors' Statements

The teenagers who were cited for underage consumption of alcohol appeared at a Juvenile Preliminary hearing on May 23, 2007, and several gave written statements as follows:

Robert Greely, "To my knowledge, they [the Butturinis] did not provide us or anyone there with alcohol."

Will Akers, "We had known about the Butturinis' party for a couple of days as did most of the people attending Prom. Everyone had beer or some sort of alcohol I do not know where people got their alcohol. I entered the house one time and saw beer in the kitchen with parents present. We got our alcohol from people already at the party. I never saw the Butturinis give out alcohol but I did see them walking around the house."

Kaylah Badeaux, "I witnesses [sic] several underage drinkers at the home. I did not witnesses [sic] the Butturinis actually hand out alcohol, however, alcohol was

everywhere. When officers arrived, Mr. and Mrs. Butturini began to tell everyone to empty and hide all alcohol. Mr. Butturini was awake and participating in the party."

Mason Burks, "I received alcohol from people I met there, but was not given to by the Butturinis."

Kathryn Machiela, " I obtained alcohol previously and brought it to the party. I never saw the Butturinis give alcohol to anyone. Mr. Butturini was walking around outside."

Ryan Pratt, "I saw them [the Butturinis] walking around the house, mingling with the kids. They were not asleep."

### III. Standard for Summary Judgment

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the absence of a genuine issue of fact rests with the moving party. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). At this stage, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Defendants argue that probable cause existed for the plaintiffs' arrests; therefore, plaintiffs' action against all defendants should be dismissed. Defendants further

argue that they are entitled to qualified immunity as reasonable officers in the defendants' position could have disagreed as to the reasonableness of arresting the Butturinis.

Plaintiffs, on the other hand, argue that the officers did not have probable cause to arrest them on May 6, 2007, for contributing to the delinquency of a minor; the officers did not have probable cause to arrest them on May 14, 2007 for providing alcohol to minors; and the defendants are not entitled to qualified immunity because arresting an individual without probable cause violates clearly established law, and is objectively unreasonable.

## IV.  Probable Cause

Officers have probable cause to make an arrest if the facts and knowledge within their knowledge at the time of the arrest was sufficient to warrant a prudent man in believing that the plaintiffs had committed or were committing an offense. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1998). Probable cause requires a "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). Probable cause is established if there is an objectively reasonable basis for the belief that a crime has been committed. *Id.* at 563. "The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). The probability of criminal activity is assessed under a reasonableness standard based on "an

examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). "The court should ask whether the officers acted reasonably under the settled law and the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Once probable cause is established, an officer is under no obligation to continue investigating and may instead pursue the arrest of the suspect. *Crockett v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003). Probable cause may also be established from the collective knowledge of the police rather than from the officer who actually made the arrest. *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989).

The plaintiffs were arrested by Officer Scarbrough on May 6, 2007 and charged with contributing to the delinquency of a minor. Tennessee law provides that an adult commits the offense of contributing to the delinquency of a minor if he or she

> Contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an active delinquency, unruly conduct or by aiding the child in concealing an act of delinquency or unruly conduct.

Tenn. Code Ann. § 37-1-156(a). Contributing to the delinquency of a minor "may be committed in an unlimited variety of ways which tend to produce or encourage or to continue conduct with a child which would amount to delinquent conduct." *Birdsell v. State*, 330 S.W.2d 1, 5 (Tenn. 1959). It is unlawful for anyone under the age of twenty-one to

-12-

possess or consume intoxicating liquor or beer in Tennessee. *See* Tenn. Code Ann. §57-3-412(a)(3)(A).

On May 14, 2007, plaintiffs made their first court appearance and were served with a warrant for providing alcoholic beverages to minors. That warrant was sworn and executed by Officer Blakney. Tenn. Code Ann. § 57-3-412(a)(3)(A) provides that it is unlawful for anyone under the age of 21 to possess or consume intoxicating liquor or beer. Tenn. Code Ann. § 39-15-404 provides:

> (2) It is an offense for a person to give or buy alcoholic beverages or beer for or on behalf of any minor or to cause alcohol to be given or bought for or on behalf of any minor for any purpose;
>
> (3)(B) It is an offense for any owner, occupant or other person having a lawful right to the exclusive use and enjoyment of property to knowingly allow a person to consume alcoholic beverages, wine or beer on the property; provided, that the owner, occupant or other person knows that, at the time of the offense, the person consuming is an underage adult.

In *State v. Kiestler,* 2009 WL 152143 (Tenn.Crim.App. Jan. 20, 2009), the Tennessee Court of Criminal Appeals upheld the defendant's conviction for contributing to the delinquency of a minor for turning a blind eye to the minors' consumption of alcohol at a party at her residence. The court further found that the Tennessee statute did not require that the defendant have provided the juveniles with the alcohol in order for her to be found guilty of contributing to the delinquency of a minor.

-13-

Considering the totality of the evidence, the court finds a sufficient basis for probable cause that plaintiffs were in violation of the Tennessee statutes. A probable cause determination is an inquiry into probability, not certainty. The investigating officers have to have more than a mere suspicion but less than a *prima facie* case. Here, the officers confronted ample evidence that increased the probability that plaintiffs had violated the Tennessee statutes. No dispute exists that the defendant officers were dispatched to the plaintiffs' home by 911 at approximately 3:24 a.m. on May 6, 2007, after 911 received a complaint of a "loud party," and officers encountered multiple minors who were or had been illegally consuming alcoholic beverages on plaintiffs' property. Alcohol paraphernalia and alcohol were present inside and outside the residence. Multiple children on or inside the property failed field sobriety tests conducted by the officers. Twenty-three citations were issued to the minors for underage consumption, and their parents were ultimately called to pick them up and take them home. In addition, several of the minors told the officers that they had obtained the alcohol at the Butturini home. Accordingly, the court finds that the facts and circumstances within the officers' knowledge were sufficient to warrant reasonable officers in believing that probable cause existed to arrest the Butturinis for the offense of contributing to the delinquency of a minor in violation of Tenn. Code Ann. § 37-1-156(a) and/or for the offense of providing alcoholic beverages to minors in violation of Tenn. Code Ann. § 39-15-404. Therefore, the court finds that because probable cause existed to arrest the Butturinis, no constitutional violation occurred, and their § 1983 claims are **DISMISSED with prejudice**.

## V. Qualified Immunity

Moreover, assuming that a constitutional violation occurred, the court finds that the officers would be entitled to qualified immunity for their actions. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether an official is entitled to qualified immunity, a court must first consider, "whether, based on the applicable law, a constitutional violation occurred." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). If the court finds a constitutional violation, the inquiry proceeds to an examination of whether it involved the "clearly established constitutional rights of which a reasonable person would have known." *Id.* at 1158. The issue is whether plaintiffs have alleged sufficient facts supported by sufficient evidence to indicate what the officers allegedly did was objectively unreasonable in light of plaintiffs' clearly established constitutional rights. *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Plaintiffs must show that the "officer knew or reasonably should have known that the action he took within his sphere of official responsibility would have violated the constitutional rights of the plaintiff." *Harlow*, 457 U.S. at 815.

In order to defeat qualified immunity, plaintiffs must demonstrate that any officer in the defendants' position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. *Dominque v.*

*Teib*, 831 F.2d 673, 676 (6th Cir. 1987). In other words, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, the court has found that defendants had probable cause to arrest plaintiffs for violation of the Tennessee statutes, so there was no violation of plaintiffs' constitutional rights. Moreover, because of the widespread consumption of alcohol at the residence while the plaintiffs were present, the court further finds that reasonable officers could make the same decision to arrest plaintiffs based upon the circumstances at the plaintiffs' residence. Because plaintiffs cannot show that the officers actions were unreasonable under the circumstances, they cannot meet the burden of proof on the issue of qualified immunity. Accordingly, the court finds that the officers are entitled to qualified immunity on plaintiffs' claims under § 1983.

## VI. Municipal Liability

Defendants assert that plaintiffs cannot set forth any facts which show that any policy or custom of Loudon County was the moving force behind the alleged violation of plaintiffs' federal constitutional rights. In addition, defendant Sheriff Guider asserts that no facts exist that he directly participated in any aspect of plaintiffs' arrest or prosecution. Plaintiffs do not contest defendants' position relative to the actions against Loudon County or Sheriff Tim Guider. Accordingly, the court **GRANTS** summary judgment to these defendants and they will be **DISMISSED** from the lawsuit.

## VII. State Law Claims

Defendants move to dismiss plaintiffs' state law claims for assault and battery, false arrest, false imprisonment, outrageous conduct, and violation of plaintiffs' rights under the Tennessee Constitution.

Plaintiffs' claims for false arrest and false imprisonment are subsumed in plaintiffs' federal claims for arrest without probable cause. Because the court has found that defendants had probable cause to arrest plaintiffs, defendants are **GRANTED** summary judgment as to these claims, and the same are hereby **DISMISSED with prejudice**.

Defendants argue that since they were arrested without probable cause, the use of any force during the commission of such an unlawful arrest is actionable, and that a technical assault and battery occurred when they were handcuffed and placed in the police car. The court finds plaintiffs' argument without merit. First, the court has found that the officers had probable cause to arrest plaintiffs' for violation of the Tennessee statutes. Second, the right to make an arrest necessarily carries with it the right to use some degree of physical force, coercion or threat thereof to effect it. *Graham*, 490 U.S. at 396. Here, plaintiffs' have not alleged that any excessive force was used by the officers during their arrests. Based on the record, the court finds that the police used no more force than necessary to effect plaintiffs' arrest and that the amount of force used by the police officers to arrest plaintiffs was objectively reasonable. To rule otherwise, would require an officer

to arrest a suspect without touching that individual, an impossible proposition. Accordingly, plaintiffs' claims for excessive force will be **DISMISSED with prejudice** against all defendants.

Plaintiffs do not contest defendants' position relative to the claim of outrageous conduct or the private Tennessee Constitution claims. Accordingly, the court **GRANTS** summary to defendants, and plaintiffs' claims for outrageous conduct and violation of the Tennessee Constitution are **DISMISSED with prejudice.**

## VIII. Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment [Doc. 23] is **DENIED;** defendants' motion for summary judgment [Doc. 16] is **GRANTED**, and this action is **DISMISSED in its entirety.**

**ENTER:**

　　　　s/ Thomas W. Phillips　　
United States District Judge